IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IO GROUP, INC., | No. C-04-04175 EDL |
| Plaintiff, | **REPORT AND RECOMMENDATION RE: PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT** |
| v. | |
| MARTIN TANGUAY, as known as, KEVIN DORN, an individual, and JOSEPH QUAINTER, an individual | |
| Defendants. | |

On October 1, 2004, Plaintiff IO Group filed this action against Defendant Kevin Dorn for, *inter alia*, copyright infringement. On June 20, 2005, Plaintiff filed a first amended complaint adding Joseph Quainter as a defendant and adding Martin Tanguay as an alternative name for Defendant Dorn. The summons and complaint were served on Defendant Quainter on August 25, 2005. Sperlien Decl. ¶ 2. The clerk of the court entered default against Defendant Quainter on November 22, 2005. Efforts to serve Defendant Dorn, also known as Martin Tanguay, were unsuccessful and on January 9, 2006, Plaintiff dismissed Defendant Dorn/Tanguay with prejudice.

On February 1, 2006, Plaintiff filed a motion for default judgment against Defendant Quainter. The motion came on for hearing on March 14, 2006. Attorney Gill Sperlein appeared for Plaintiff. Defendant Quainter did not file an opposition to Plaintiff's motion and did not appear at the hearing.

**Background**

In its complaint, Plaintiff alleges the following facts: Plaintiff, doing business as Titan Media, produces, markets and distributes adult entertainment products, including Internet website content, videos, DVDs and photographs. Compl. ¶ 2. Plaintiff maintains a subscription-based

1 website through which high-resolution versions of its photographic works and audiovisual content
2 can be viewed by individuals. Compl. ¶ 10. Plaintiff has won numerous awards for its work, and is
3 recognized in the industry as one of the highest quality producers of gay erotica. Compl. ¶ 12;
4 Declaration of Keith Webb ¶ 2.

5    Defendant Quainter is an individual who co-owns and co-operates a highly interactive,
6 commercial Internet website (www.kevscave.com) featuring adult entertainment. Compl. ¶ 4, 15.
7 Defendant Quainter received revenue from the infringing website in the form of affiliate payments
8 made directly to him. Compl. ¶ 4.

9    At various times, Plaintiff's employees discovered a number of Plaintiff's copyrighted
10 photographs being publicly displayed by and through www.kevscave.com. Compl. ¶ 17.
11 Defendants reproduced, distributed and publicly displayed more than 157 copyrighted photographs.
12 Id. ¶¶ 19, 23.

13    On June 10 and 11, 2004, Plaintiff sent a take down notice and a cease-and-desist letter to
14 Defendant Dorn, demanding that he remove all of Plaintiff's proprietary content from
15 www.kevscave.com and that he refrain from any future use of Plaintiff's content. Declaration of
16 Gill Sperlein Decl. ¶ 7. Subsequently, Defendants removed the images from the website. See
17 Sperlein Decl. ¶ 8.

18 **Default Judgment**

19    Federal Rule of Civil Procedure 55(b)(2) authorizes the Court to enter judgment against a
20 defendant against whom a default has been entered, assuming that defendant is not an infant, is not
21 incompetent or in military service. Defendants here are not unrepresented minors, incompetent or in
22 military service. See Sperlein Decl. ¶ 6.

23    "The general rule of law is that upon default the factual allegations of the complaint, except
24 those relating to the amount of damages, will be taken as true." Geddes v. United Financial Group,
25 559 F.2d 557, 560 (9th Cir. 1977) (citing Pope v. United States, 323 U.S. 1, 12 (1944)). In
26 exercising its discretion to grant default judgment, the court may consider the following factors: (1)
27 the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claims; (3) the
28 sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a

dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. See Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Generally, upon entry of default, the factual allegations of the complaint are taken as true, except for those relating to damages. See Televideo Systems, Inc. v. Heidenthal, 826 F.2d 915, 917 (9th Cir.1987).

Here, the Eitel factors weigh in favor of default judgment. Most importantly, the substantive claim in the complaint on which Plaintiff seeks default judgment appears to have merit and the complaint is sufficient to state that claim. A claim for copyright infringement has two elements: (1) ownership of the copyright; and (2) infringement by the defendant. See Kling v. Hallmark Cards, Inc., 225 F.3d 1030, 1037 (9th Cir. 2000). In its complaint, Plaintiff alleges that each of the 157 photographs at issue is registered with the Copyright Office and the Defendants reproduced, distributed and publicly displayed the photographs on www.kevscave.com without permission. Compl. ¶¶ 19, 23, 28. Therefore, Plaintiff has alleged sufficient facts to state a claim for copyright infringement.

The remaining Eitel factors also weigh in favor of granting default judgment. First, if the motion were denied, Plaintiff would likely be without a remedy; Plaintiff attempted to reach a compromise with Defendants but was unsuccessful. See Sperlein Decl. ¶ 9; see Pepsico, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) ("If Plaintiffs' motion for default judgment is not granted, Plaintiffs will likely be without other recourse for recovery."). Second, the amount of money sought is not completely disproportionate or unreasonable given the number of copyrighted images that Defendant copied. Finally, because Defendant did not file an answer to the complaint, there is little to suggest that there is a possibility of a dispute concerning material facts, and it is unlikely that Defendant's default was due to excusable neglect, especially when Plaintiff served its motion for default judgment on Defendant, but still received no response.

Accordingly, the motion for default judgment should be granted. The remaining issue is the amount of the judgment.

**Damages for Copyright infringement**

A copyright infringer is liable for either the actual damages incurred or statutory damages.

1  See 17 U.S.C. § 504(a).  Plaintiff concedes that it is impossible to determine the former.  Statutory

2  damages are assessed by the Court in the range between $750 and $30,000 per work, increased to

3  $150,000 in cases of willful infringement.  See 17 U.S.C. § 504(c).

4  Here, Plaintiff argues that Defendant should pay at least $2,500.00 per work infringed, for a

5  total of $392,500.00 ($2,500 x 157 photographs).  Because Plaintiff believes that the infringement

6  was willful, Plaintiff argues that Defendant should pay $7,500.00 per work, which represents treble

7  damages, for a total of $1,177,500.00 ($7,500 x 157 photographs).

8  In support of Plaintiff's request for $2,500.00 per work infringed, Plaintiff has submitted the

9  declaration of Keith Webb, its vice-president of marketing and legal affairs.  Attached to Mr.

10  Webb's declaration is a form license for use of Plaintiff's images.  See Webb Decl. Ex. A.  That

11  license provides for a one-time license of an image and states that Plaintiff shall be compensated

12  $2,500.00 in liquidated damages per image for the unauthorized use of an image.  See Webb Decl. ¶

13  8.  Also attached to Mr. Webb's declaration is a legal statement of Plaintiff's intellectual property

14  rights, which is posted on its website.  See Webb Decl. Ex. B.  The legal statement provides in part:

15  "Each individual photograph or image contained on our web pages or portion thereof contained in

16  this site has a retail value of $2,500.00 U.S. and is only available when ordered from the author."

17  See id. at 1.

18  This type of evidence of damages does not always justify an award of $2,500.00 per

19  photograph on default judgment.  Compare IO Group v. Bench, C-04-3116 CRB (JCS) (N.D. Cal.

20  Mar. 19, 2005) (order adopting report and recommendation re: application for default judgment by

21  the court) at 8:7-8 (awarding statutory damages of $2,500.00 for one work infringed), with IO Group

22  v. Ryan, C-02-5140 RMW (N.D. Cal. Apr. 21, 2003) (order granting in part and denying in part

23  plaintiff's application for default judgment) at 1:23-2:1 (finding statutory damages of $1,000.00 per

24  work to be the appropriate amount) and IO Group v. Adkins, 2005 WL 1492381, *5  (N.D. Cal.,

25  June 23, 2005) (awarding statutory damages of $1,000.00 per work infringed).  The Court is

26  persuaded by the latter cases.  The form license offered by Plaintiff is just that -- a form.  Plaintiff

27  failed to provide any evidence of actual licenses negotiated with third parties.  Further, the form

28  license does not show what a third party would pay for a license; it simply describes the penalty for

4

unauthorized use. Also, the legal statement of intellectual property rights is an unsubstantiated claim that the images are each worth $2,500.00. Plaintiff failed to submit any evidence that a third party in the marketplace has actually paid $2,500.00 per image or that in negotiations, Plaintiff would never accept anything but $2,500.00.

The Court concludes that Plaintiff should receive $1,000.00 per work infringed. An award of more than the statutory minimum of $750 per image is warranted because of the large number of images copied and the fact that Plaintiff limits distribution of its images to maintain their value. See Webb Decl. ¶¶ 4-7. An award greater than $1,000.00 is not justified because there is no evidence that Defendants enjoyed profits of $1,000 or more per image.

The remaining question is whether the infringement was willful. The Court does not credit any allegations in the complaint regarding willfulness because those allegations go to damages. See, e.g., IO Group v. Ward, C-03-5285 JSW (N.D. Cal. Sept. 1, 2004) (order granting motion for default judgment) at 3:12-14 ("IO Group's allegations of willfulness bear directly on the question of damages; the assertion here that Defendant acted willfully is insufficient to justify enhanced damages in this instance.").

Plaintiff first makes its standard arguments in these types of default judgment cases. Plaintiff claims that willfulness is shown because Defendant could not have reasonably believed that the photographs were not protected by copyright, or had passed into the public domain so they were no longer protected by copyright. According to Plaintiff, Defendant willfully used Plaintiff's high-quality photographs to build its business and then, after this lawsuit was filed, switched to legally obtained content. In addition, Plaintiff argues that Defendants' failure to settle this matter or to respond to this lawsuit is evidence of willfulness.

The Court does not find these standard arguments persuasive. Knowingly posting material on a website that does not belong to the posting party is, of course, classic willful conduct. See Perfect 10 v. Talisman, 2000 U.S. Dist. LEXIS 4564 at 5 (C.D. Cal. Mar. 27, 2000) (holding that when a defendant " knew or should have known that . . . photographs belonged to someone else at the time that it posted them on its website [the defendant's] infringement . . . was willful."). In this case, however, there is no evidence that Defendant knew or should have known that the posted

5

1  photographs belonged to Plaintiff; Plaintiff itself states that it has discovered "well over one hundred
2  websites illegally publishing its copyright protected works." Webb Decl. ¶ 16. Defendant may have
3  obtained Plaintiff's copyrighted material from another source with insufficient reason to believe the
4  material was protected by copyright, rather than, for example, dedicated to the public domain. See
5  IO Group v. Bench, C-04-3116 CRB (JCS) (N.D. Cal. Mar. 19, 2005) (order adopting report and
6  recommendation re: application for default judgment by the court) at 8:1-4 ("In other words,
7  Defendant could have obtained the photograph at issue from one of the many web sites that has
8  pirated Plaintiff's images and further, could reasonably have believed that the photograph was not
9  protected by copyright."). Nor is the Court convinced that the unwillingness to settle and the failure
10 to participate in this lawsuit by themselves constitute willfulness. Furthermore, Defendant did
11 remove the copyrighted images from its website after receiving Plaintiff's cease and desist letter.
12 See IO Group v. Ryan, C-02-5140 RMW (N.D. Cal. Apr. 21, 2003) (order granting in part and
13 denying in part plaintiff's application for default judgment) at 2:8-10 ("As these acts of infringement
14 pre-dated plaintiff's mailing of the July 18, 2002 cease and desist letter to defendant, the court does
15 not find the infringement to have been willful.").
16     Plaintiff also raises a new willfulness argument in this case based on a recent amendment to
17 the Copyright Act regarding the use of false contact information in registering a domain name:

> In a case of infringement, it shall be a rebuttable presumption that the infringement was committed willfully for purposes of determining relief if the violator, or a person acting in concert with the violator, knowingly provided or knowingly caused to be provided materially false contact information to a domain name registrar, domain name registry or other domain name registration authority in registering, maintaining or renewing a domain name used in connection with the infringement.

22 17 U.S.C. § 504(c)(3)(A) (2005). Plaintiff argues that Defendant's use of false contact information
23 to register the www.kevscave.com domain name triggers the statute's rebuttable presumption of
24 willful infringement. Congress enacted this provision in 2004 in response to the growing number of
25 online fraud cases associated with the booming Internet economy in an effort to target the practices
26 whereby "materially false contact information is increasingly used by those who infringe on the
27 copyrights and trademarks of others to hide their identity and avoid civil suits. . . . . The Committee
28 believes that such activity is a sign of willful infringement and should deserve, in most cases, the

6

1  additional civil penalties that result from willful infringement." H. R. Rep. No. 108-536 (2004) (". .
2  . the Committee maintains that consumers should be able to check the ownership of a particular
3  domain name. If penalties are not created to penalize the provision of materially false contact
4  information in connection with a violation of existing law, there will be no incentive for domain
5  name registrants to provide accurate information in the first place."). This legislation has a broad
6  scope, sweeping beyond registration information included in the publicly-accessible WHOIS
7  database of registrant-supplied domain name ownership contact information and covering "all
8  contact information supplied by domain name owners to domain name registrars, registries, or other
9  authorities." H.R. Rep. No. 108-536 (2004).

10  Here, Plaintiff's search in May 2004 of publicly available records in the WHOIS database in
11  an effort to obtain contact information for the operators of www.kevscave.com revealed an address
12  in Canada. Sperlein Decl. ¶ 18. Plaintiff's attempts to have process served at that address by
13  Canadian officials were unsuccessful. Sperlein Decl. ¶ 11 (process server returned a certification in
14  March 2005 stating that the address was not good and the person had moved); ¶ 14 (process server
15  returned a certification in November 2005 that Defendant Kevin Dorn/Martin Tanguay was
16  unknown at the address, which was a UPS store that did not have any information about Defendant);
17  Ex. C, D. Plaintiff performed another WHOIS database search on January 23, 2006, which resulted
18  in the return of a similar, although less complete, address in Canada. Sperlein Decl. ¶ 19.

19  The two unsuccessful service attempts demonstrate that the domain name registration contact
20  information for www.kevscave.com was materially false. Moreover, the contact information
21  remained essentially the same in January 2006, but had been slightly changed to remove the street
22  address, which demonstrates a further attempt to create anonymity and avoid lawsuits. Accordingly,
23  Defendant Quainter, as the co-owner and co-operator of www.kevscave.com, either acting on his
24  own, or in concert with co-owner and co-operator Defendant Dorn/Tanguay, knowingly provided or
25  caused to be provided materially false contact information in connection with the registration and
26  maintenance of the registration of that domain name. Therefore, the rebuttable presumption of
27  willfulness imposed by § 504(c)(3)(A) applies. Although there is some evidence that Defendant's
28  infringement was not willful, such as the removal of the infringing images from Defendant's website

7

upon receipt of Plaintiff's cease and desist letter, that evidence is not sufficient to rebut the strong presumption of willfulness under § 504(c)(3)(A).

The Court recommends finding that Defendant's infringement was willful under § 504(c)(3)(A), and that Plaintiff is entitled to increased damages. Plaintiff's motion for default judgment should be granted for copyright infringement in the amount of $471,000 ($3,000.00 x 157 works).

**Conclusion**

The Court recommends granting Plaintiff's motion for default judgment in the total amount of $471,000.00. Any party may serve and file specific written objections to this recommendation within ten (10) business days after being served with a copy. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); Civil Local Rule 72-3 . Failure to file objections within the specified time may waive the right to appeal the District Court's order.

**IT IS SO ORDERED.**

Dated: March 15, 2006

ELIZABETH D. LAPORTE
United States Magistrate Judge